UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KENYA YOUNG,

        Plaintiff,

v.

UNKNOWN ARTIS and
UNKNOWN KING,

        Defendants.

                                 /

Case No. 1:22-cv-340

Hon. Robert J. Jonker

## REPORT AND RECOMMENDATION

This is a *pro se* civil rights action brought pursuant to 42 U.S.C. § 1983 by Kenya Young ("Young"), a prisoner in the custody of the Michigan Department of Corrections (MDOC). The alleged incidents occurred at Earnest C. Brooks Correctional Facility (LRF). Young filed the present action on April 11, 2022, alleging that defendants LRF Warden Fredeane Artis and LRF Deputy Warden Christopher King violated his constitutional rights with respect to defendants' response to an outbreak of COVID-19 at LRF which occurred in February 2022. This matter is now before the Court on defendants' motion for summary judgment for failure to exhaust administrative remedies (ECF No. 14).

        **I.**        **Young's allegations**

Young alleged that on February 14, 2022, his housing unit was tested for COVID-19. Compl. (ECF No. 1, PageID.4). At that time Young tested negative. *Id*. Defendants ordered the Security Response Team to force Young into a cell for over 13 hours with a confirmed positive prisoner and over 30 non-positive prisoners disregarding COVID-19 mandatory quarantine

1

measures. *Id*. On February 22, 2022, Young and his wing were tested for COVID-19 again, and Young tested negative. *Id*. at PageID.5. Defendants ordered all confirmed positive prisoners on that day to be moved and housed in Young's wing, where the positive tested prisoners "were not quarantined but rather allowed to roam free and intermix and intermingle with plaintiff and other none-positive prisoners daily." *Id*. There is no allegation that Young tested positive for COVID-19. However, Young alleged that defendants created unsafe conditions by "intentionally placing known confirmed Covid=19 [sic] positive prisoners in the cell and or in close proximity to confirmed negative prisoners" and that this "served no justifiable penological objective." *Id*. at PageID.6. Young alleged that defendants violated his Eighth Amendment rights because they were deliberately indifferent to his health and failed to protect him from "[c]onfirmed positive prisoners". *Id*.

## II. Legal standard

### A. Summary judgment

Defendants have moved for summary judgment for lack of exhaustion. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B.    Lack of Exhaustion

#### 1.    Exhaustion requirement

The Prison Litigation Reform Act (PLRA) provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007).

In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural

rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

### 2.    MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* MDOC Policy Directive ("PD") 03.02.130 (effective March 18, 2019).  A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q.  If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ Q and S.  The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely.  Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ S (emphasis in original).  The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ W.  If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ DD.  Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ HH.

### III.    Discussion

#### A.    **Plaintiff did not exhaust any grievances**

Defendants point out that Young did not exhaust any grievances through Step III before filing this action.  In support of their motion, defendants submitted a copy of Young's

MDOC Step III Grievance Report from January 1, 2016, through July 7, 2022 (ECF No. 15-3, PageID.67) which does not list a single grievance received through Step III. Young filed a response in opposition to the motion which contained no argument and referred to the reasons "articulated further in the accompanying brief." *See* Response (ECF No. 18). However, Young did not submit a brief. Based on this record, Young did not properly exhaust any grievance to support his claims against defendants. *Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93. Accordingly, defendants' motion for summary judgment should be granted.

### B. Plaintiff's amended complaint should be stricken

After failing to file a substantive response to defendants' motion for summary judgment, Young filed an Amended Complaint which alleged the same incident and claims. In an apparent attempt to avoid summary judgment for lack of exhaustion, Young's amended complaint included a copy of an unprocessed Step I grievance form dated February 17, 2022, and what appear to be original handwritten kites addressed to "Grievance Coordinator" dated February 24, 2022, March 3, 2022, and March 30, 2022, referring to a grievance dated 2-17-22 concerning the incident that occurred on 2-14-22 involving Warden Artis and Deputy Warden King. *See* Unprocessed Grievance and Kites (ECF Nos. 19-1 and 19-2).

The amended complaint is not properly before the Court and should be stricken. There is no basis for plaintiff filing an amendment as a matter of course, because the amended complaint was not filed "21 days after serving it" (Fed. R. Civ. P. 15(a)(1)(A), "21 days after service of a responsive pleading" (Fed. R. Civ. P. 15(a)(1)(B), or "21 days after service of a motion under Rule 12(b), (e), or (f)" (Fed. R. Civ. P. 15(a)(1)(B). Furthermore, the case management order (CMO) provides that, "Motions to join parties or to amend the pleadings must be filed within 45 days of the date of this Order." *See* CMO (ECF No. 16, PageID.69). While plaintiff filed the

5

amended complaint within 45 days, he did not file a motion to amend as required by the CMO. *See* Fed. R. Civ. P. 15(b) ("In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires."). Finally, plaintiff's submission of a copy of an unprocessed grievance and kites sent to a grievance coordinator does not demonstrate proper exhaustion through Step III.

### IV. Recommendation

For these reasons, I respectfully recommend that defendants' motion for summary judgment on the basis of exhaustion (ECF No. 14) be **GRANTED**, that Young's amended complaint (ECF No. 19) be **STRICKEN**, and that this action be terminated.

Dated: June 14, 2023                                /s/ Ray Kent
                                                    RAY KENT
                                                    United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).